## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD R. SALTER,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:19-1691** |
| **v.** | : | **(JUDGE MANNION)** |
| **JOHN WETZEL, _et al._,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

**I.    <u>B</u>ACKGROUND**

Plaintiff, Edward R. Salter, an inmate formerly confined at the State Correctional Institution, Dallas, Pennsylvania, filed the above caption civil rights action pursuant to 42 U.S.C. §1983.[1] (Doc. 1). The named Defendants are the following Department of Corrections employees: Secretary John Wetzel, Chief Grievance Officer Dorina Varner, Captain Piskorik and Corrections Officer Donald Werts. <u>Id</u>.

---

[1] Plaintiff is currently housed at the Phoenix State Correctional Institution, Collegeville, Pennsylvania.

Presently before the Court is Defendants' motion to dismiss Plaintiff's amended complaint. (Doc. 18). The motion is fully briefed, and for the reasons that follow, the Court will grant Defendants' motion to dismiss.

## II.   ALLEGATIONS IN COMPLAINT

The Plaintiff alleges that on September 15, 2018, at approximately 10:30 am, Plaintiff was instructed to go the control center to pick up his legal mail. (Doc. 1, complaint). Upon arrival, he claims that he "immediately noticed the C.O. Werts had already opened the Plaintiff's legal mail without the plaintiff being present and was reading the contents of the Plaintiff's legal mail to C.O. Moss and C.O. Sankey." Id. When Plaintiff questioned C.O. Werts as to why the legal mail was opened without Plaintiff being present, C.O. Werts "told the Plaintiff 'because we can Salter, this is SCI-Dallas, we do what we want here, we don't have to follow any rules or laws, Mr. Wetzel, Mrs. Varner, Captain Piskorik, are all aware of the new changes to legal mail, we can open you legal mail without you being present, because we believe drugs are coming in through legal mail from the courts, further, under the new mail policy instituted by Secretary of the PA Department of Corrections, John E. Wetzel, it clearly states you will no longer receive the original copies of your legal mail, we will make copies of your legal mail and give it to you,

the original copies of your legal mail will be placed in an evidence bag, and destroyed by us, period." Id. C.O. Werts then stated, "so Salter, do what you do best and file a grievance on this one, it won't do you any good." Id.

On the same day, Plaintiff filed Grievance No. 758301, claiming that "the named Defendants are violating the Plaintiff's Fifth Amendment right to court access, by opening, reading the Plaintiff's legal mail without him being present, and making copies of the Plaintiff's legal mail, then destroying the original copies of the Plaintiff's legal mail, which serves no penological interest to the Defendants." Id.

By Initial Review Response dated September 21, 2018, Plaintiff's grievance was denied as follows:

> I have been assigned as the grievance officer to investigate your complaint that on 9/15/18 your received legal mail CO Deluca had you sign the legal mail log, you noticed your legal mail was already opened and asked CO Deluca why it was already opened, and CO Deluca stated, "I don't know". CO Moss then inspected the contents you then asked him why he was reading it and CO Moss replied "because we can this is SCI Dallas we do what we want here, also we believe drugs are coming from the courts. CO Sankey then made copies of your legal mail and originals were placed in an evidence bag and stored.
>
> CO's Werts, Moss and Sankey were interviewed (CO Deluca was not present) and stated your mail was not opened already, also denied saying this is SCI Dallas we do what we want here. Furthermore, the video was reviewed and shows CO Werts not CO Deluca opening your mail in the containment box then handing it to CO Sankey to make copies. At no time did I see anyone read your mail. On 9.21.2018, I interviewed Mr. Nelson and he denied telling you Security Office is not allowed to keep the originals because its illegal.

On 8/29/18, the Secretary of Corrections ordered an immediate lockdown of all State Correctional Facilities. This action was a first step in curbing the introduction of contraband into the facilities to ensure the safety of all inmates, staff, visitors and volunteers entering our facilities. During the lockdown, it was necessary to curtail visitation, mail and inmate movement throughout our facilities as it was reasonably related to penological interests. Following the lockdown, normal operations will and have resumed with many processes being reviewed and altered as necessary to honor the Department's commitment to ensure the safety of all aforementioned parties.

The lockdown, including any restrictions during or after the lockdown, may have been a temporary inconvenience; however, there were no apparent or intended rights violations. Moreover, inmates who feel that they may have missed a legal deadline as a direct result of the lockdown are free to contact the Office of Chief Counsel directly who, if necessary, can explain to the respective courts, the duration and restrictions in place at the time. Policies and procedures are subject to change. Policy and procedure can be amended or suspended in cases where safety and security are concerned.

I find your grievance to be without merit; therefore, denied. Your relief of the return of your original copy and $10,000 dollars is also denied.

(Doc. 1-1 at 8, Initial Review Response). Plaintiff filed a timely appeal to the

Facility Manager, (Doc. 1-1 at 6-7), which was denied by Response dated

October 9, 2018, as follows:

I have reviewed the above-noted grievance, the Grievance Officer's response and your subsequent appeal of said grievance. My decision is as follows:

Captain Piskorik was assigned as grievance officer and has adequately addressed your grievance concerns regarding your legal mail not being opened in your presence and that CO Moss read your legal mail.

DC-ADM 803, Section 1, D.a. states "Incoming privileged correspondence will be opened and inspected for contraband in the presence of the inmate to whom it is addressed"; Section 1, D.b. states "The incoming privileged correspondence will then be photocopied in the presence of the inmate and the photocopies of the contents shall be delivered to the inmate"; Section 1.D.d. "The original incoming privileged correspondence will be sealed in a manila or opaque envelope(s) in the presence of the inmate. The envelope(s) shall be secured with evidence tape."

I find your grievance to be unfounded; therefore, I uphold the initial response. Your request for the original copies of your legal mail and $10,000 compensation is denied.

(Doc. 1-1 at 5, Facility Manager's Appeal Response). On October 10, 2018, Plaintiff filed an appeal of the Facility Manager's decision to final appeal before the Secretary's Officer of Inmate Grievance & Appeals. (Doc. 1-1 at 3).

On November 6, 2018, Plaintiff's final appeal was denied as follows:

You claim in your grievance that on 9/15/18 you received legal mail from CO Deluca and he had you sign the mail log. You claim that you noticed the mail was opened and you asked CO Deluca why and you claim he said he didn't know. You claim that CO Moss then inspected your mail and you asked him why he was reading your mail and you claim that he said that this is SCI Dallas and we do what we want to and we believe drugs are coming in from the courts. You claim that CO Sankey made copies of your mail and placed the original in the evidence bag. An investigation was conducted regarding your allegations. The record reflects that CO Deluca was not present. The officer present was CO Werts and he was interviewed. He reported that your mail was not opened. The record reflects that all other staff were interviewed and they all denied saying that this is SCI Dallas and we do what we want. The record reflects that the video was reviewed and at no time were staff observed reading your mail. The record reflects that the new mail procedure was directed and approved by

Secretary Wetzel on 8/29/18. The legal mail will still be sent to the institution and the mail will be opened in front of you and inspected. The legal mail will be copied and you will receive the copy. Your ability to receive mail has not been hindered. You are not being denied access to the courts. You have failed to provide any evidence to substantiate your claims. Therefore, your requested relief is denied.

(Doc. 1-1 at 2, Final Appeal Decision).

Plaintiff alleges that a second occurrence of his mail being opened and read without him being present, occurred on October 2, 2018 at approximately 7:30 am. (Doc. 1 at 23).

Plaintiff states that he was informed by his block officer that he had legal mail to pick up at the security office. Id. He claims that he "noticed again, Defendant Werts had opened the Plaintiff's legal mail without the Plaintiff being present, Defendant Werts was reading out aloud, the contents of the Plaintiff's legal mail, the Plaintiff asked Defendant Werts 'When will you stop opening my legal mail without me being present?' and 'When will you quit reading the contents of my legal mail out loud?'." Id. Defendants Werts told Plaintiff "Listen Salter, Didn't you get the memo the last time you picked-up your legal mail? I believe I told you this is SCI Dallas, we do what we want here, we don't have to follow any rules, laws, nothing, so Salter, since you already filed a grievance on the first time I opened your legal mail without you being present, and read your legal mail out loud, file another grievance, and see where that gets you, nowhere, matter of fact, Mr. Wetzel, Mrs.

Varner, Captain Piskorik, are all aware of your last grievance complaining about how I opened your legal mail without you being present, reading the contents of your legal mail, they approved it, so do what you do best Salter, file another grievance and as I told you last time, it won't do you any good." Id.

On the same day, Plaintiff filed Grievance No. 764177, claiming that the named Defendants are violating his First Amendment right to court access, by opening, reading the Plaintiff's legal mail without him being present, and making copies of the Plaintiff's legal mail, then destroying the original copies of the Plaintiff's legal mail, which serves no penological interest to the Defendants. (Doc. 1 at 23, Grievance)

By Initial Review Response dated October 16, 2018, Plaintiff's grievance was denied as follows:

> I have been assigned as the grievance officer to investigate your complaint on October 2, 2018 at approximately 0730 you went to control to pick up your legal mail and handcuffed and led upstairs, CO Werts, and another CO, was present, CO Werts opened your legal mail in front of him, placed it inside of the containment box read your legal mail gave it to the other CO, then handed it to you.

> On 8/29/18, the Secretary of Corrections ordered an immediate lockdown of all State Correctional Facilities. This action was a first step to curbing the introduction of contraband into the facilities to ensure the safety of all inmates, staff, visitors and volunteers entering our facilities. During the lockdown, it was necessary to curtail visitation, mail and inmate movement throughout our facilities as it was reasonably related to penological interests. Following the lockdown, normal operations will

- 7 -

and have resumed with many processes being reviewed and altered as necessary to honor the Department's commitment to ensure the safety of all aforementioned parties.

The lockdown, including any restrictions during or after the lockdown, may have been a temporary inconvenience; however, there were no apparent or intended rights violations. Moreover, any inmates who feel that they may have missed a legal deadline as a direct result of the lockdown are free to contact the Office of Chief Counsel directly who, if necessary, can explain to the respective courts, the duration and restrictions in place at the time. Policies and procedures are subject to change. Policy and procedure can be amended or suspended in cases where safety and security are concerned. We are simply diverting the delivery and providing inmates with a copy instead of the original.

The process of using physical restraints to acquire your legal mail is temporary because you are entering an area outside the security office which is a secure area and any inmate that enters that area is handcuffed.

I find your grievance to be without merit; therefore, denied. Relief is also denied.

(Doc. 1-1 at 22, Initial Review Response). Plaintiff filed a timely appeal to the

Facility Manager, (Doc. 1-1 at 10-21), which was denied by Response dated

November 13, 2018, as follows:

I have reviewed the above-noted grievance, the Grievance Officer's response and your subsequent appeal of said grievance. My decision is as follows:

Captain Piskorik was assigned as grievance officer and has adequately addressed your grievance concerns regarding your legal mail being opened without you present and that CO Werts read your legal mail.

After further investigation, it was discovered Captain Piskorik did review the video footage and you were unquestionably present during the process. Additionally, CO Werts did not read your legal mail.

DC-ADM 803, Section 1, D.a. states "Incoming privileged correspondence will be opened and inspected for contraband in the presence of the inmate to whom it is addressed"; Section 1, D.b. states "The incoming privileged correspondence will then be photocopied in the presence of the inmate and the photocopies of the contents shall be delivered to the inmate"; Section 1.D.d. "The original incoming privileged correspondence will be sealed in a manila or opaque envelope(s) in the presence of the inmate. The envelope(s) shall be secured with evidence tape."

I find your grievance to be without merit; therefore, I uphold the initial response. Your request for the original copies of your legal mail and $10,000 compensation is denied.

(Doc. 1-1 at 19, Facility Manager's Appeal Response). On November 14, 2018, Plaintiff filed an appeal of the Facility Manager's decision to final appeal before the Secretary's Officer of Inmate Grievance & Appeals. (Doc. 1-1 at 17).

On November 30, 2018, Plaintiff's final appeal was denied as follows:

You claim in your grievance that on 10/2/18 you were sent to control to pick up your legal mail. You claim that you were handcuffed and led upstairs. You claim that CO Werts opened and read your legal mail. You claim that they then handed it to you. An investigation was conducted regarding your allegations. The record reflects that the new mail procedure was directed and approved by Secretary Wetzel on 8/29/18. The legal mail will still be sent to the institution and the mail will be opened in front of you and inspected. The legal mail will be copied and you will receive the copy. Your ability to receive mail has not been hindered. You are not being denied access to the courts. The record reflects that the officers were interviewed and they denied

reading your mail. You have failed to provide any evidence to substantiate your claims. Therefore, your requested relief is denied.

(Doc. 1-1 at 16, Final Appeal Decision).

On October 1, 2019, Plaintiff filed the instant action in which he claims that Defendants violated his Fifth Amendment right to access to the courts "by opening and reading Plaintiff's legal mail on two occasions, without the Plaintiff being present, destroying the original copies of the Plaintiff's legal mail, which has no penological interest." (Doc. 1).

Plaintiff believes that "Defendants continued a pattern, policy, practice, custom, in continuing to open, read, the Plaintiff's legal mail without the Plaintiff being present, and continued to destroy the original copies of the Plaintiff's legal mail." Id. For relief, Plaintiff seeks compensatory and punitive damages, as well as injunctive and declaratory relief. Id.

## III.   STANDARDS

### A. Motion to Dismiss

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v.

UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint

are sufficient to show that the plaintiff has a "plausible claim for relief"." Id. at 211 (quoted case omitted).

### B. 42 U.S.C. §1983 Standard

In order to state a viable claim under §1983, a plaintiff must plead: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990); Richardson v. Min Sec Cos., Civ. No. 08-1312, 2008 WL 5412866, at *1 (M.D. Pa. Dec. 29, 2008). Moreover, in order for a §1983 claim to survive a motion to dismiss, the plaintiff must sufficiently allege that the defendant was personally involved in the act or acts that the plaintiff claims violated his rights. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Solan v. Ranck, 326 Fed.Appx. 97, 100 (3d Cir. 2009).

Therefore, supervisors cannot be liable under §1983 under the traditional standard of respondeat superior. Santiago, 629 F.3d at 128. Instead, there are two theories of supervisory liability that are applicable to §1983 claims: (1) "a supervisor may be personally liable under §1983 if he or she participated in violating the plaintiff's rights, directed others to violate

them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under §1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm'." A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).

## IV. DISCUSSION

### A. Official Capacity Claims

Plaintiff has brought suit against the named Defendants in their official capacities. A state official sued in his or her official capacity is not a "person" for purposes of §1983 when a plaintiff seeks monetary damages, as the Supreme Court has not construed §1983 as an abrogation of the states' Eleventh Amendment immunity. Will v. Mich. Dep't of State Police, 491 U.S. 58, 63-71 (1989). Will precludes actions for damages against state officials acting in their official capacities. Id. at 63-71 However, the state's immunity is not shared by state officers to the extent that the suit seeks prospective injunctive or declaratory relief or seeks damages from the officers in their individual capacities. Ex parte Young, 209 U.S. 123 (1908); see also Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635 (2002). Consequently,

the Court will dismiss all claims asserted against Defendants in their official capacities with prejudice.

## B. **Personal Involvement**

"A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior." Rode, 845 F.2d at 1207-08; see also Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (citing Rode.) Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Rode, 845 F.2d at 1207. As set forth in Rode,

> A defendant in a civil rights action must have personal involvement in the alleged wrongs.... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or knowledge and acquiescence, however, must be made with appropriate particularity.

Id. at 1207.

Moreover, the filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, do not establish the involvement of officials and administrators in any underlying constitutional deprivation. See Pressley v. Beard, 266 Fed.Appx. 216, 218 (3d Cir. 2008) (not precedential) ("The District Court properly dismissed these defendants and any additional defendants who

were sued based on their failure to take corrective action when grievances or investigations were referred to them."); Brooks v. Beard, 167 Fed.Appx. 923, 925 (3d Cir. 2006) (not precedential) (holding that allegations that prison officials responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); Ramos v. Pa. Dep't of Corr., Civ. No. 06–1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit."); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (noting that prison officials' failure to respond to an inmate's grievance does not state a constitutional claim), aff'd, 142 F.3d 430 (3d Cir. 1998) (table). Because Plaintiff fails to provide any allegations of personal involvement in his complaint against Defendants Wetzel, Piskorik and Varner, these Defendants will be dismissed, as Plaintiff has failed to state a claim upon which relief may be granted.

### C. **Interference with Legal Mail**

Plaintiff's complaint alleges interference with his legal mail on two occasions. The Supreme Court has made clear that prisoners do not

surrender all constitutional rights during their confinement, and the Supreme Court has instructed that "federal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84 (1987). The Third Circuit has explained that prisoners "do not forfeit their First Amendment right to use of the mails," particularly with respect to privileged "legal mail" exchanged with counsel, and that a "pattern and practice of opening properly marked incoming [legal] mail outside an inmate's presence infringes communication protected by the right to free speech." Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995), abrogated in part by Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997); Taylor v. Oney, 196 Fed.Appx. 126, 128 (3d Cir. 2006) (reaffirming holding in Bieregu that "prison officials impinge upon the First Amendment rights of prisoners when they open prisoners' legal mail outside the presence of the addressee prisoner."). In order to state a claim of this sort under the First Amendment, a prisoner must allege that the interference with his legal mail was done according to a "pattern and practice." Jones v. Brown, 461 F.3d 353, 359 (3d Cir. 2006) ("A state pattern and practice ... of opening legal mail outside the presence of the addressee inmate ... impinges upon the inmate's right to freedom of speech."). A prisoner may allege that actions were taken pursuant to a pattern or practice without the existence of a "blanket policy." See, e.g.,

Jones, 461 F.3d at 359 (distinguishing between a "pattern and practice" and an "explicit policy"). Prisoners need not allege or prove any "actual injury" beyond the direct injury to their First Amendment right to use the mails. Taylor, 196 Fed.Appx. at 128.

Notably, courts have found that mere isolated incidents of opening legal mail outside of an inmate's presence, without evidence of an improper motive, is insufficient to establish a First Amendment violation. See, e.g., Nixon v. Sec'y Pa. Dep't of Corr., 501 Fed.Appx. 176, 178 (3d Cir. 2012) ("[T]he District Court correctly determined that Nixon's claim alleging a single, isolated interference with his personal mail was insufficient to constitute a First Amendment violation." ); Hale v. Pa Dept. of Corr., No. 3:07-cv-0345, 2010 WL 3791833, at *3 (M.D. Pa. Sept. 16, 2010) ("opening [court mail] outside [prisoner's] presence on two occasions ... does not demonstrate a pattern or practice of improper handling of his legal mail sufficient to find a First Amendment violation ... Isolated incidents of opening legal mail outside of an inmate's presence, without any evidence of improper motive, is nothing more than an assertion of negligence, and is insufficient to establish a constitutional violation."); Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (accidental opening of a single piece of legal mail did not give rise to a claim); Beese v. Liebe, 51 Fed.Appx. 979, 981 (7th Cir. 2002)

(dismissing First Amendment claim based on allegations that four pieces of legal mail had been opened outside of inmate's presence, since the inmate presented no evidence that his legal mail had been intentionally opened, and where the inmate-plaintiff merely speculated that the prison official intended to do so); Gardner v. Howard, 109 F.3d 427, 430-31 (8th Cir. 1997) (isolated and inadvertent mishandling of legal mail not actionable); Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990) (same).

In the complaint, Plaintiff alleges that his legal mail was opened outside of his presence on two occasions. Specifically, Plaintiff alleges that on September 15, 2018 and October 2, 2018, Defendant Werts opened and read his legal mail from the court, outside of his presence. He claims that pursuant to policy, he was provided with copies of his mail and the originals were destroyed. Plaintiff avers that he filed grievances relating to these incidents, which he has attached to his complaint, along with the responses to his grievances and appeals therefrom. In the response to his grievances, Plaintiff was informed that on both occasions, there was no evidence, nor did Plaintiff present any, that Defendants read his legal mail without him present. Additionally, Plaintiff was informed that on August 29, 2018, there was an immediate lockdown of all State Correctional Facilities and a new procedure with respect to legal mail was implemented in which the mail would be

opened and inspected in front of the inmate and then a copy would be made and provided to the inmate. Inmates were provided with the opportunity to contact the Office of Chief Counsel, if any court deadlines were missed, so that the Office of Chief Counsel could contact the appropriate court to explain the delay.

The Court finds that Plaintiff has failed to state a claim upon which relief may be granted. Plaintiff's complaint sets forth two, isolated events in which he alleges that his legal mail was opened outside of his presence.  Because these isolated incidents of opening Plaintiff's legal mail outside of his presence, without any evidence of improper motive, is simply insufficient to establish a constitutional violation, Plaintiff's complaint fails to state a claim upon which relief may be granted and will be dismissed.

Furthermore, it does not appear that Plaintiff raises a First Amendment access to the court claim, as he has not made any allegations in his complaint that he was inhibited in presenting a past legal claim and that he suffered an "actual injury" and that he has no other remedy that may be awarded as recompense for a lost claim. See Monroe v. Beard, 536 F.3d 198, 2014 (3d Cir. 2008) (citing Christopher v. Harbury, 536 U.S. 403, 415 (2002)); Toussaint v. Good, 276 Fed.Appx. 122, 124 (3d Cir. 2008) (affirming the denial of a first amendment claim regarding the denial of access to the

courts where Plaintiff alleged no specific facts regarding the alleged harm, provided no dates of attempted filing or details describing how his litigation was affected).

## V.  LEAVE TO AMEND

Courts are cautioned that because of the liberal pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." Id. The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).

Here, as alleged, the Court finds that allowing Plaintiff to amend his interference with legal mail claim would be futile as two occasions of opening legal mail does not demonstrate a pattern or practice of improper handling of Plaintiff's legal mail sufficient to find a constitutional violation. See Hale, 2010 WL 3791833, at *3; Nixon, 501 Fed.Appx. at 178, n.1 (affirming district court's dismissal of first amendment legal mail claim without leave to amend as any amendment would be futile because the underlying claim lacks merit); see also Foman, 371 U.S. at 182. Accordingly, Plaintiff will not be granted leave to amend this claim.

## VI. CONCLUSION

For the foregoing reasons, the Court will grant, without leave to amend, Defendants' motion to dismiss Plaintiff's complaint for failure to state a claim.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: June 30, 2020**
19-1691-01

- 21 -